IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CT-3114-M

CURTIS ALEXANDER CHALK,            )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        ORDER
                                   )
PAULA SMITH, EDWARD F. BASDEN,     )
and SUSAN ANDERSON,                )
                                   )
        Defendants.                )

This matter is before the court on defendants' motion for summary judgment (D.E. 44). Plaintiff responded in opposition. For the reasons stated below, defendants' motion is granted.

PROCEDURAL HISTORY

On April 27, 2021, plaintiff, a former state inmate proceeding pro se, filed the instant action pursuant to 42 U.S.C. § 1983 alleging defendants were deliberately indifferent to his serious medical needs when he was denied dental care, in violation of the Eighth Amendment to the United States Constitution. (Compl. (D.E. 1) at 5–6). On March 21, 2022, the court conducted a frivolity review of the complaint and allowed the action to proceed. (Mar. 21, 2022, Ord. (D.E. 15) at 3–4).

On December 9, 2022, defendants filed their instant motion for summary judgment relying on a memorandum in support, statement of material facts, and appendix of exhibits thereto, which includes: (1) declaration of counsel; (2) two fully exhausted grievances filed August 30, 2020, and January 4, 2020; (3) seven sick call appointment requests dated between September 6, 2020, and

January 21, 2021; (4) declaration of defendant Paula Smith ("Smith"), a former employee of the North Carolina Department of Public Safety ("NCDPS"); (5) declaration of defendant Edward F. Basden ("Basden"), Warden of New Hanover Correctional Center ("NHCC"); (6) declaration of defendant Susan Anderson ("Anderson"), the nurse supervisor at NHCC; and (7) Anderson's response to plaintiff's grievance filed January 4, 2021. (Mot. Summ. J. (D.E. 44); Def. Mem. in Supp. (D.E. 45); Def. Statement of Material Facts (D.E. 46); Def. App. (D.E. 47)).

On December 12, 2022, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), plaintiff was provided notice of the motion for summary judgment and instructions for responding. (Roseboro Letter (D.E. 48)). Plaintiff was informed that he must respond to defendants' motion for summary judgment with

> affidavits (written statements signed before a notary public and under oath), declarations (written statements bearing a certificate that the statement is signed under penalty of perjury), deposition transcripts, discovery responses, sworn statements (bearing a certificate that the statement is signed under penalty of perjury) or other evidence in such a manner so as to persuade the court that a genuine issue of material fact remains to the determined.

(Roseboro Letter (D.E. 48) at 1).

On December 29, 2022, plaintiff filed a response in opposition of defendants' motion for summary judgment. (Pl.'s First Resp. (D.E. 49)). However, on January 23, 2023, plaintiff filed a verified corrected response in opposition, which plaintiff also titles as an affidavit. (Pl.'s Corrected Resp. (D.E. 51)).[1] In support plaintiff provided the following exhibits: (1) two step one grievance responses filed September 4, 2020, and January 6, 2021; (2) a step two grievance response filed

---

[1] Plaintiff's first response in opposition is identical to plaintiff's corrected response except the corrected response contains an additional page. (Pl.'s Corrected Resp. (D.E. 51) at 9). Accordingly, the court will only cite to the corrected response in this order.

2

January 13, 2021; (3) plaintiff's grievance filed January 4, 2021; (4) two sick call appointment requests dated September 6, 2020, and November 5, 2021; and (5) plaintiff's denture treatment plan, appearing to be dated November 10, 2022. (Pl.'s Exs. (D.E. 51-1)).

## STATEMENT OF THE FACTS

The facts of this case are largely undisputed and, viewed in the light most favorable to plaintiff, are summarized as follows. Since 2020, plaintiff has suffered from having broken dentures that caused bleeding and swelling in his gums. (Pl.'s Resp. (D.E. 51) at 1–2; Pl.'s Ex. 4 (D.E. 51-1) at 4). There were days that plaintiff could not eat because of the swelling and pain. (Pl.'s Resp. (D.E. 51) at 2). Plaintiff bought ten packs of ibuprofen from the canteen every three to four days and slept with table salt on his gums to ease the pain. (Id.). As a result of the pain and not eating, plaintiff lost over 20 pounds. (Id.).

In 2020, while housed at Caledonia Correctional Institute, plaintiff filed at least two grievances regarding obtaining a dental appointment. (Pl.'s Ex. 1 (D.E. 51-1) at 1; see also Pl.'s Ex. 4 (D.E. 51-1) at 4; Pl.'s Ex. 5 (D.E. 51-1) at 5; Def.'s Ex. A (D.E. 47-2)). Plaintiff received a response informing him that he was on a long waiting list for dental care because of healthcare restrictions related to the COVID-19 pandemic. (Pl.'s Ex. 1 (D.E. 51-1) at 1). Plaintiff was also informed that he was being transferred, and the dental assistant at that location stated plaintiff's name automatically would be added to that facilities list. (Id.). Plaintiff was advised to follow up with dental at the facility to which he was transferring to ensure he was indeed added to the list. (Id.).

Plaintiff was then transferred to NHCC. (Pl.'s Resp. (D.E. 51) at 3; see also Pl.'s Ex. 2 (D.E. 51-1) at 2; Basden Decl. (D.E. 47-12) ¶¶ 5–8). On January 4, 2021, plaintiff filed a grievance

3

informing officials at NHCC that he had been trying to see a dentist and placed approximately seven sick calls since November 2019. (Pl.'s Ex. 4 (D.E. 51-1) at 4; see also Pl.'s Ex. 5 (D.E. 51-1) at 5). In the grievance, plaintiff also stated he had yet to see a dentist at NHCC and requested to be transferred to another facility where he could have a dental appointment. (Pl.'s Ex. 4 (D.E. 51-1) at 4).

Defendant Anderson became aware of plaintiff's request for a dental appointment upon his filing of the grievance. (Anderson Decl. (D.E. 47-13) ¶ 6). In 2020, during the COVID-19 pandemic, no dentists were sent to correctional facilities unless there was a dental emergency, which would be determined by the medical doctor on call. (Id. ¶ 13). Dental clinics were closed for all of 2020, and appointments for inmates began again in January 2021 causing a backlog. (Id. ¶¶ 7–8, 12; see also Pl.'s Ex. 2 (D.E. 51-1) at 2). Further, once appointments started, Anderson was limited to sending only five inmates at a time and all five were required to be from the same dorm. (Anderson Decl. (D.E. 47-13) ¶¶ 9, 14). Such restrictions were instituted to prevent the spread of COVID-19. (Id. ¶ 17).

Although defendant Anderson did not provide the step one grievance response, she provided a witness statement explaining that the dental clinics were closed for months during the COVID-19 pandemic and just recently reopened. (Anderson Decl. (D.E. 47-13) ¶¶ 7–8; Def. Ex. A to Anderson Decl. (D.E. 47-14) at 1). The clinics were operating in a limited capacity only treating inmates with toothaches, and Anderson could only send inmates one dorm at a time. (Anderson Decl. (D.E. 47-13) ¶ 6; Def. Ex. A to Anderson Decl. (D.E. 47-14) at 1). Anderson expressed she would try to send plaintiff the next time his dorm was scheduled to see the dentist. (Def. Ex. A to Anderson Decl. (D.E. 47-14) at 1). On January 6, 2021, plaintiff received a step

4

one response informing plaintiff of the explanation Anderson provided. (Pl.'s Ex. 2 (D.E. 51-1) at 2).

On January 7, 2021, plaintiff appealed to step two of the grievance process. (Id.). On January 13, 2021, plaintiff received a step two grievance response from defendant Basden. (Pl.'s Ex. 2 (D.E. 51-1) at 3; Basden Decl. (D.E. 47-12) ¶ 7). Defendant Basden informed plaintiff that he had an appointment to see the dentist on January 21, 2021. (Pl.'s Ex. 2 (D.E. 51-1) at 3; Basden Decl. (D.E. 47-12) ¶ 7). Plaintiff did not appeal the grievance to step three. (See Pl.'s Ex. 2 (D.E. 51-1) at 3).

Prior to responding to plaintiff filing the January 4, 2021, grievance, plaintiff spoke with defendant Basden about his dental concerns, and Basden directed plaintiff to speak with medical to schedule an appointment. (Basden Decl. (D.E. 47-12) ¶ 6). Other than this conversation and Basden's response to plaintiff's grievance, Basden had no further communication with plaintiff concerning a dental appointment. (Id. ¶ 8). Additionally, defendant Anderson received no further grievances from plaintiff. (Anderson Decl. (D.E. 47-13) ¶ 10).

Although defendant Basden informed plaintiff he had a dentist appointment scheduled for January 21, 2021, plaintiff was never taken to such an appointment. (Pl.'s Resp. (D.E. 51) at 5). As of July 10, 2022, plaintiff had yet to received medical care related to his dentures. (Id. at 6).

Between September 6, 2020, and January 21, 2021, plaintiff filed seven sick call appointment requests. (Pl.'s Ex. 5 (D.E. 51-1) at 5; Def.'s Ex. C (D.E. 47-4); Def.'s Ex. D (D.E. 47-5); Def.'s Ex. E (D.E. 47-6); Def.'s Ex. F (D.E. 47-7); Def.'s Ex. G (D.E. 47-8); Def.'s Ex. H (D.E. 47-9); Def.'s Ex. I (D.E. 47-10)). However, only the September 6, 2020, request addressed plaintiff's gum and denture issues. (Pl.'s Ex. 5 (D.E. 51-1) at 5).

5

Defendant Smith retired from the NCDPS on December 31, 2017, and never met or spoke to plaintiff or plaintiff's wife. (Smith Decl. (D.E. 47-11) ¶¶ 5–6).

COURT'S DISCUSSION

A. Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). For cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 247–48, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). To determine whether a genuine issue of material fact exists for trial, the court views the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

B. Analysis

As noted, plaintiff alleges defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs regarding his need for replacement dentures.

6

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (internal citation omitted). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). Medically, a plaintiff demonstrates a basic human need is where he has received a diagnosis "by a physician as mandating treatment" or the medical need "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citations omitted).

The second prong requires a showing that "the officials acted with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted) (quotation and emphasis omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."), overruled in part on other

grounds by Farmer, 511 U.S. at 837. Nevertheless, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (finding a defendant must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the defendant's] action or inaction."); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (requiring that the prison official knew of and disregarded an "objectively serious condition, medical need, or risk of harm."). Beyond such actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko, 535 F.3d at 241 (quotation marks and citation omitted). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Disagreements over forms of treatment concern medical judgments, not the Eighth Amendment, id., and mere negligence in diagnosis or treatment does not state a constitutional claim, see Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

Here, the court assumes without deciding that plaintiff has established prong one. Therefore, the court focuses its discussion on prong two. Regarding defendant Smith, the undisputed evidence establishes Smith retired from the NCDPS prior to plaintiff complaining of the medical issues with his dentures. (See Smith Decl. (D.E. 47-11) ¶ 5). Accordingly, defendant Smith was not personally involved for the alleged violation of plaintiff's Eighth Amendment

rights. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (requiring a §1983 plaintiff to "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights").

Regarding defendants Basden and Anderson, the evidence shows that both defendants took appropriate action when confronted with plaintiff's concerns. As noted above, access to dental care was limited during the COVID-19 pandemic, but once pandemic restrictions were eased, plaintiff was transferred to NHCC. (Pl.'s Ex. 1 (D.E. 51-1) at 1, 3; Anderson Decl. (D.E. 47-13) ¶¶ 7–8, 12–13; Basden Decl. (D.E. 47-12) ¶¶ 5–8). However, defendant Anderson's ability to provide inmates dental care continued to be restricted, and only five inmates from the same dorm could be sent to the dental clinic at a time. (Pl.'s Ex. 2 (D.E. 51-1) at 2; Anderson Decl. (D.E. 47-13) ¶ 6). Prior to filing a grievance, plaintiff spoke to defendant Basden about his dental concerns, and Basden told him to communicate such concerns to medical. (Basden Decl. (D.E. 47-12) ¶ 6). Once Anderson received plaintiff's grievance regarding lack of dental care, she explained the restrictions and confirmed she would send plaintiff to the clinic as soon as possible. (Pl.'s Ex. 2 (D.E. 51-1) at 2; Anderson Decl. (D.E. 47-13) ¶¶ 7–8; Def. Ex. A to Anderson Decl. (D.E. 47-14) at 1). When the grievance to appealed to step two, Basden in formed plaintiff he had a dental appointment scheduled for January 21, 2021. (Pl.'s Ex. 2 (D.E. 51-1) at 3; Basden Decl. (D.E. 47-12) ¶ 7). No evidence demonstrates Anderson or Basden had any further communication with plaintiff, nor is there evidence Anderson or Basden were aware plaintiff was not taken to his January 21, 2021, appointment. Further, the record does not show plaintiff complained to Anderson or Basden directly about his missed appointment, and no other grievances were filed regarding dental care. Accordingly, the court finds defendants Anderson and Basden acted

reasonably to the risk plaintiff's dental problems presented to his health and safety, and plaintiff has failed to establish a genuine issue of material fact. See Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

## CONCLUSION

For the reasons discussed herein, the court GRANTS defendants' motion for summary judgment (D.E. 44). The clerk is DIRECTED to close this case.

SO ORDERED, this the 21st day of September, 2023.

*Richard E. Myers II*
RICHARD E. MYERS, II
Chief United States District Judge